IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ERNEST WILLBANKS,            )
                             )
            Plaintiff,       )
                             )
    v.                       )    1:20CV481
                             )
KILOLO KIJAKAZI,[1]          )
Acting Commissioner of Social Security, )
                             )
            Defendant.       )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Ernest Willbanks ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.      PROCEDURAL HISTORY

Plaintiff protectively filed his application for DIB on April 25, 2016, alleging a disability onset date of October 2, 1994. (Tr. at 16, 200-06.)[2] His claim was denied initially (Tr. at 87-98, 115-18), and that determination was upheld on reconsideration (Tr. at 99-114, 120-23). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 124-25.) Plaintiff, along with his attorney and an impartial

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue the suit by reason of the last sentence of section 205(g) of the Social Security Act § 405(g).
[2] Transcript citations refer to the Administrative Record [Doc. #9].

vocational expert, attended the subsequent video hearing on January 8, 2020. (Tr. at 16.) At that time, Plaintiff, through his attorney, amended his alleged onset date to April 1, 2013. (Tr. at 16.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 28), and, on March 30, 2020, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

3

of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" from his amended alleged onset date, April 1, 2013, through his date last insured of December 31, 2018. The ALJ therefore concluded that Plaintiff met his burden at step one of the sequential evaluation process. (Tr. at 18.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> bipolar depression; degenerative disc disease at C5-6 and C6-7; and lumbar radiculopathy[.]

(Tr. at 18.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 19-20.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform light work with the following, non-exertional limitations:

> occasional climbing [of] ladders, ropes, or scaffolds; frequent climbing [of] ramps or stairs; occasional overhead reaching; avoiding concentrated use of moving machinery and concentrated exposure to unprotected heights; and work in a low stress job, meaning only occasional changes in the work setting, occasional interaction with the public, and occasional interaction with coworkers.

(Tr. at 20.) Based on this determination, the ALJ found at step four of the analysis that Plaintiff could not perform any of his past relevant work. (Tr. at 26.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 27-28.)

Plaintiff now contends that in formulating his RFC assessment, the ALJ failed to properly consider Plaintiff's Department of Veterans Affairs ("VA") disability rating in accordance with Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337 (4th Cir. 2012).

Under the regulations in effect at the time Plaintiff's claim was filed, and as further explained in Social Security Ruling ("SSR") 06-03p, "a determination made by another agency that [the claimant is] disabled or blind is not binding on" the Social Security Administration ("SSA"). Social Security Ruling 06-03p, Titles II and XVI: Considering Opinions And Other Evidence From Sources Who Are Not "Acceptable Medical Sources" In Disability Claims; Considering Decisions On Disability By Other Governmental and Nongovernmental Agencies, 2006 WL 2329939, at *6 (Aug. 9, 2006) ("SSR 06-03p"). Rather, "the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner." Id. at *7. Nevertheless, the SSA is "required to evaluate all the evidence in the case record that may have a bearing on [its] determination or decision of disability, including decisions by other governmental and nongovernmental agencies." Id. at *6. Therefore, "evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." Id. Moreover, "the

6

adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases." Id. at *7.

In Bird v. Comm'r of Soc. Sec. Admin., the Fourth Circuit clarified the Commissioner's obligations under 20 C.F.R. § 404.1504 and SSR 06-03p, and held that the Commissioner must give substantial weight to a Veterans Affairs disability rating, based on the following reasoning:

> The VA rating decision reached in Bird's case resulted from an evaluation of the same condition and the same underlying evidence that was relevant to the decision facing the SSA. Like the VA, the SSA was required to undertake a comprehensive evaluation of Bird's medical condition. Because the purpose and evaluation methodology of both programs are closely related, a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency. Thus, we hold that, in making a disability determination, the SSA must give substantial weight to a VA disability rating. However, because the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will vary, an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate.

Bird, 699 F.3d at 343 (emphasis added). The Fourth Circuit further explained, in Woods v. Berryhill, 888 F.3d 686 (4th Cir. 2018),

> that in order to demonstrate that it is "appropriate" to accord less than "substantial weight" to [another agency's] disability decision, an ALJ must give "persuasive, specific, valid reasons for doing so that are supported by the record." McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002) (describing standard for VA decisions); Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam) (explaining that ALJs need not give great weight to VA disability determinations "if they adequately explain the valid reasons for not doing so").

Id. at 692-93.

In the present case, the VA had issued a determination finding Plaintiff 100% disabled, and the ALJ acknowledged that determination as follows:

7

> Pursuant to 20 CFR 404.1504, a decision by any nongovernmental agency or any other governmental agency about whether a claimant is disabled or blind is based on its rules and is not the Social Security Administration decision about whether that claimant is disabled or blind. The Social Security Administration must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency is not binding on the Social Security Administration. Nevertheless, I have considered the Department of Veterans Affairs (VA) determination that [Plaintiff] is 100 percent totally and permanently disabled due to service-connected disabilities. A VA disability rating decision dated February 12, 2015, indicates that [Plaintiff] was found to have service[-]connected disabilities as follows: 10% for tinnitus; 10% for right lower extremity radiculopathy; 10% for left lower extremity radiculopathy; 10% for degenerative disease of the lumbar spine; 10% for posttraumatic vascular headaches; and 100% for PTSD with major depressive disorder and [traumatic brain injury]. [Plaintiff] was also found entitled to individual unemployability under VA rules. While I acknowledge the VA disability determination, I note that [Plaintiff's] mental symptoms do not result in limitations so severe as to be disabling based on social security law, as described in more detail above. I have considered the record as a whole, including medical evidence provided by the VA, in making my determination.

(Tr. at 26) (internal citations omitted). Significantly, as set out in that paragraph, the ALJ's only specifically stated rationale for deviating from the VA's decision was that the VA rules differed from the Social Security rules in some unspecified way, and that the VA rules were "not binding" on the SSA. In addition, with respect to Plaintiff's VA determination, the ALJ simply "acknowledged" the VA determination, but did not give it substantial weight, and instead just concluded that Plaintiff's mental symptoms were not disabling "based on social security law." (Tr. at 26.)

Defendant nevertheless contends that the ALJ's analysis was sufficient because the ALJ not only included this generic language but also incorporated the entire prior analysis by saying "as described in more detail above." (Def. Br. [Doc. # 17] at 14-15.) However, this equally generic language does not provide the requisite detail, particularly given that the ALJ's prior, incorporated discussion did not distinguish the VA decision or provide "persuasive, specific,

8

valid reasons" for according less than substantial weight to the VA's 100% mental disability rating in this case. Woods, 888 F.3d at 692-93 (emphasis in original) (citations omitted).

As in Bird and Woods, there may be reasons that could support a variance from the VA decision, but it is just not clear which reasons might apply here. For example, the ALJ rejected Plaintiff's claim of Traumatic Brain Injury, finding that this claim was inconsistent with the medical evidence of record, which could be a reason for discounting the VA's determination to the extent it included Traumatic Brain Injury. (Tr. at 21.) However, the ALJ did not include such an explanation. Moreover, the VA decision specifically concluded that all of Plaintiff's behavioral/emotional symptoms were due to his mental health condition, and the "100 percent evaluation has been granted using the mental health evaluation criteria" (Tr. at 186) with a "100 percent evaluation for your major depressive order." (Tr. at 188.) This is the same mental impairment accepted by the ALJ, so it is not apparent that the rejection of the Traumatic Brain Injury claim would impact the weight given to the VA determination. Similarly, the ALJ's general discussion reflected that Plaintiff was "generally stable with treatment" with exceptions primarily when he was admitted for substance abuse programs or relapses. (Tr. at 22-23.) It is possible that the ALJ could have varied from the VA determination based on the different treatment of substance abuse issues.[5] However, the ALJ

---

[5] Under the Social Security regulations, as recently reiterated by the Court of Appeals for the Fourth Circuit, "[t]he law is clear that a claimant who would otherwise qualify as disabled is not entitled to benefits if alcoholism or drug abuse is a contributing factor material to the disability determination. See 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). The regulations implementing those provisions specify that '[t]he key factor ... is whether we would still find you disabled if you stopped using drugs or alcohol.' 20 C.F.R. § 404.1535(b)(1)." Sizemore v. Berryhill, 878 F.3d 72, 80-81 (4th Cir. 2017). In contrast, " an alcohol abuse disability arising as a direct result of a psychiatric condition fits within [the Veterans' Administration] words of authorization for compensation . . . and does not fit within [the statute's] express exclusion from compensation." See Allen v. Principi, 237 F.3d 1368, 1376 ("We do not think that the language of § 1110 precludes compensation in the third situation—i.e., Allen's alleged case—where an alcohol abuse disability arises secondarily from or as evidence of the increased severity of a non-willful misconduct, service-connected disorder.").

9

did not include such a determination and instead specifically found that Plaintiff's substance abuse was not a severe impairment and did not result in a severe exacerbation of mental symptoms. (Tr. at 18-19.) Thus, it is not apparent that substance abuse issues were material to the ALJ's decision or that the different standards for substance abuse were the basis for departing from the VA's determination. The ALJ also referenced the opinion of State Agency psychological consultant Dr. Herrera from October 2018, but the ALJ accepted only parts of that opinion and it is not clear why he valued that opinion above Plaintiff's treating and examining physicians at the VA or how the partial opinion would overcome the substantial weight accorded to the VA determination. Thus, while there may be reasons for varying from the VA decision, the record before the ALJ did not "clearly demonstrate[] that . . . a deviation [from the VA's decision was] appropriate" as set out in Bird, 699 F.3d at 343, nor did the ALJ "adequately explain [his] valid reasons" for this departure in accordance with Woods.

Notably, in Woods itself, the Commissioner argued that, "because the ALJ's decision as a whole makes clear that he considered the same evidence on which the [agency] relied, the ALJ did not need to refer expressly to that evidence in discussing the [agency] decision." Woods, 888 F.3d at 693. However, the Fourth Circuit rejected this contention. In doing so, the Fourth Circuit acknowledged that "[i]t may well be that the ALJ considered this evidence in deciding *both* which doctors and evidence to credit *and* whether the [agency] decision deserved substantial weight," but the ALJ did not so specify, and the Fourth Circuit held that "meaningful review cannot rest on such guesswork." Id. at 693-94 (citations omitted).[6]

---

[6] In the context of the present case, the Court further notes that any effort to supply after-the-fact rationalizations fails to remedy the ALJ's omission. See Sec. & Exch. Comm'n v. Chenery Corp., 318 U.S. 80, 87 (1943) (courts must review administrative decisions on the grounds upon which the record discloses the action was based); see also Anderson v. Colvin, No. 1:10CV671, 2014 WL 1224726 at *1 (M.D.N.C. March 25,

10

In addition, as set out above, the court in Woods clarified exactly what an ALJ must do to demonstrate an "appropriate" deviation from the "substantial weight" presumption accorded to the decisions of other agencies. Id. at 692. Specifically, when according "less than 'substantial weight' to [another agency's] disability decision, an ALJ must give 'persuasive, specific, valid reasons for doing so that are supported by the record.'" Id. The court then expounded as follows:

> For example, an ALJ could explain which aspects of the prior agency decision he finds not credible and why, describe why he finds other evidence more credible, and discuss the effect of any new evidence made available after [the other agency] issued its decision. This list is not exclusive, but the point of this requirement—and of these examples—is that the ALJ must adequately explain his reasoning; otherwise, we cannot engage in a meaningful review. See Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (explaining that because we review an ALJ's factual findings for substantial evidence, an ALJ's decision must generally "include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence").

Id. at 692-93. In the instant case, the ALJ provided none of these reasons, at least in a way that is clear enough to allow for judicial review. Thus, as in Woods, the ALJ did not adequately justify his decision to accord the VA decision "less than the substantial weight it generally deserves." Id. at 693. Because a generic rationale is insufficient under the Fourth Circuit's decisions in Bird and Woods, substantial evidence fails to support the ALJ's decision, and remand is required.

---

2014) (noting that this Court's "[r]eview of the ALJ's ruling is limited further by the so-called 'Chenery Doctrine,' which prohibits courts from considering *post hoc* rationalizations in defense of administrative agency decisions. . . . Under the doctrine, a reviewing court 'must judge the propriety of [agency] action solely by the grounds invoked by the agency. . . . If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis'").

11

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). Defendant's Motion for Judgment on the Pleadings [Doc. #16] should be DENIED, and Plaintiff's Motion to Reverse the Decision of the Commissioner [Doc. # 13] should be GRANTED to the extent set out herein.

This, the 23rd day of August, 2021.

/s/ Joi Elizabeth Peake
United States Magistrate Judge